# Illinois Official Reports

## Appellate Court

---

### *People v. Kathan*, 2014 IL App (2d) 121335

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TANYA KATHAN, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-12-1335 |
| Filed<br>Rehearing denied | August 13, 2014<br>September 18, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction for "drug-driving" was upheld over her contentions that there was no evidence that the Xanax and Vicodin that she admitted taking were still in her system when she was arrested and that the State failed to prove the "unlawful use" of those substances, since defendant admitted using the substances before driving, her level of impairment was circumstantial evidence that the drugs were in her system while she was driving, especially when she was weaving, she could not locate her license when it was plainly visible in her wallet, she was "very confused" and "very incoherent," she could not explain the damage to her vehicle, and she swayed and could not keep her balance during field sobriety tests, and there was sufficient evidence of "unlawful use," despite her claim that she took the medications pursuant to a valid prescription, because she did not satisfy her burden of proof by presenting evidence of a valid prescription and that she used the prescribed dosage. |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 11-DT-2830; the Hon. Theodore S. Potkonjak, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Thomas A. Lilien and Kerry Goettsch, both of State Appellate
Defender's Office, of Elgin, for appellant.

Michael G. Nerheim, State's Attorney, of Waukegan (Lawrence M.
Bauer and Mary Beth Burns, both of State's Attorneys Appellate
Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE SPENCE delivered the judgment of the court, with opinion.
Justices Schostok and Hudson concurred in the judgment and opinion.

**OPINION**

¶ 1     Following a bench trial, the trial court found defendant, Tanya Kathan, guilty of "drug-driving" under section 11-501(a)(6) of the Illinois Vehicle Code (Vehicle Code) (625 ILCS 5/11-501(a)(6) (West 2010)). The court sentenced defendant to 12 months' court supervision and imposed a $500 fine. On appeal, defendant argues that the State's evidence was insufficient to prove her guilt beyond a reasonable doubt. We affirm.

¶ 2                                       I. BACKGROUND

¶ 3     On December 10, 2011, the State charged defendant under section 11-501(a)(6) of the Vehicle Code, which prohibits operating a motor vehicle while there is any amount of a drug, substance, or compound in a defendant's breath, blood, or urine resulting from the unlawful use or consumption of a controlled substance. A bench trial occurred on August 10, 2012.

¶ 4     The State's only witness was Lake County police officer Jonathan Pedraja, who testified as follows. On December 10, 2011, around 6:30 p.m., Officer Pedraja received a report of a reckless driver in a green Toyota Corolla. Officer Pedraja drove to the reported area and observed the car "weaving" in its own lane and crossing over the white fog line. As a result, Officer Pedraja conducted a traffic stop and asked the driver, defendant, for identification. When defendant opened her purse, she "frantically looked" for her driver's license and could not locate it even though it was clearly visible in her wallet. Defendant said that she and her passenger had been at a party, and she denied drinking, although Officer Pedraja could smell the odor of alcohol emanating from the car.

¶ 5     Officer Pedraja had defendant exit the car, at which time he noticed some damage to her vehicle's front right bumper. Officer Pedraja asked about the damage, and defendant "kind of fumbled for an answer and said that she hit a curb, although she couldn't say where the curb was or how high it was."

¶ 6     Officer Pedraja had defendant perform some field sobriety tests, including the walk-and-turn and one-leg tests. Defendant failed those tests for multiple reasons, including that she swayed throughout the process and had a hard time keeping her balance. Defendant also performed the horizontal gaze nystagmus (HGN) test, which revealed a "very high alcohol intoxication or impairment by drugs." In addition, Officer Pedraja continued to smell alcohol after defendant exited the vehicle, although he was not sure whether the smell

originated from defendant's breath, her clothing, or the vehicle. Overall, Officer Pedraja observed defendant to be "very incoherent" and "very confused on where she was, where she was going." He believed that she was under the influence of alcohol and he arrested her. The trial court viewed the video of the field sobriety tests and the arrest.

¶ 7       Following her arrest, Officer Pedraja took defendant to the station and asked if defendant had taken any medications that day. Defendant responded that she had taken " 'two Xanax pills, one recently before she started driving, and a Vicodin pill.' " Officer Pedraja asked if the pills were prescribed. Defendant replied that they were prescribed by a doctor; that she was to exercise caution before driving while on those medications; and that she was to take them as needed.

¶ 8       At the station, defendant refused to submit to a blood or urine test but agreed to take a blood alcohol content (BAC) test. The BAC test revealed no alcohol in defendant's system. The court also watched a video of defendant in the booking room.

¶ 9       Defendant moved for a directed finding, which the trial court denied.

¶ 10      During closing argument, the State argued that defendant admitted using drugs, specifically Xanax and Vicodin, "only an hour or two before driving," meaning that she was guilty under section 11-501(a)(6) of the Vehicle Code. The State further argued that defendant refused a blood or urine test because she knew that she would test positive for Xanax or Vicodin. Defense counsel responded that section 11-501(a)(6) required "some blood, urine, or breath analysis" to show evidence of drugs or an intoxicating compound in defendant's system and that no such evidence had been presented.

¶ 11      The court stated the following in reaching its decision. It had watched the video of defendant's weaving; her confusion after being pulled over; the field sobriety tests; and her admission to ingesting Xanax and Vicodin. According to the court, defendant's argument that there was no blood or urine testing was unpersuasive given her refusal to submit to such tests. The court determined that the State had proven defendant's guilt beyond a reasonable doubt.

¶ 12      Defendant filed a motion to reconsider, arguing that the State failed to prove two elements under section 11-501(a)(6). First, defendant argued that there was no evidence of a drug, substance, or compound in her breath, blood, or urine. Noting that a violation of section 11-501(a)(6) was a strict liability offense that presumed impairment, defendant argued that evidence of impairment was irrelevant. Second, defendant argued that the State failed to show that she "unlawfully used any substance." Although she admitted taking Xanax prior to driving her car, defendant pointed out, she never gave a specific time or amount of consumption. Defendant argued that her statements to Officer Pedraja were admitted at trial as substantive evidence and that this evidence was not countered by the State.

¶ 13      The State responded that defendant presented no evidence regarding a prescription but simply relied on Officer Pedraja's testimony. Accordingly, there was no testimony as to the contents of the prescription or whether she took the pills pursuant to the prescription. Based on defendant's admission of taking Xanax and Vicodin, Officer Pedraja's opinion that she failed the field sobriety tests, and Officer Pedraja's observations of defendant's slurred speech, her inability to stand, and her confusion, the State argued that the motion to reconsider should be denied.

¶ 14    The court denied defendant's motion for reconsideration under section 11-501(b) of the Vehicle Code. See 625 ILCS 5/11-501(b) (West 2010) ("The fact that any person charged with violating this Section is or has been legally entitled to use alcohol, other drug or drugs, or intoxicating compound or compounds, or any combination thereof, shall not constitute a defense against any charge of violating this Section.").

¶ 15    Defendant timely appealed.

## II. ANALYSIS

¶ 17    On appeal, defendant argues that there was insufficient evidence to prove her guilty of the offense beyond a reasonable doubt. In reviewing the sufficiency of the evidence, our inquiry is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *People v. Martin*, 2011 IL 109102, ¶ 15. "We view the evidence in the light most favorable to the prosecution, and allow all reasonable inferences from that evidence to be drawn in favor of the prosecution." *Id.*

¶ 18    Section 11-501(a)(6) prohibits the operation of a vehicle with "any amount of a drug, substance, or compound in the person's breath, blood, or urine resulting from the unlawful use *** of *** a controlled substance listed in the Illinois Controlled Substances Act." 625 ILCS 5/11-501(a)(6) (West 2010). As in the trial court, defendant argues on appeal that the State failed to prove (1) any amount of a controlled substance in her breath, blood, or urine (2) resulting from the unlawful use of a controlled substance.

¶ 19    On the first issue, defendant argues that, although she admitted to ingesting Xanax and Vicodin pursuant to a prescription, there was no evidence that it was still in her system at the time of arrest. According to defendant, the bulk of the testimony presented in this case was about impairment, which was irrelevant under section 11-501(a)(6). See *Martin*, 2011 IL 109102, ¶ 26 (violation of section 11-501(a)(6) is a strict liability violation rather than a violation that requires proof of impairment); see also *People v. Vente*, 2012 IL App (3d) 100600, ¶ 11 (section 11-501(a)(6) does not require proof of a driver's impairment, but instead requires only that a driver unlawfully use or consume any amount of a controlled substance). The State responds that impairment was relevant as circumstantial evidence of controlled substances in her system. While we agree with defendant that section 11-501(a)(6) does not require evidence of impairment, we also agree with the State that impairment is relevant as circumstantial evidence of guilt. In other words, admitting that impairment is not a requirement is not the same as saying that it is irrelevant.

¶ 20    Case law supports the conclusion that circumstantial evidence is relevant to prove the presence of a substance in a defendant's breath, blood, or urine. For example, in *People v. McPeak*, 399 Ill. App. 3d 799, 801 (2010), this court addressed the issue of whether there was sufficient evidence of a controlled substance (cannabis) in the defendant's breath, blood, or urine as required under section 11-501(a)(6). In doing so, this court stated that a "criminal conviction may be based on circumstantial evidence, as long as it satisfies proof beyond a reasonable doubt of the charged offense." *Id.* Circumstantial evidence consists of proof of facts and circumstances from which the trier of fact may infer other connected facts that reasonably and usually follow according to common experience. *Id.* In fact, it was the lack of circumstantial evidence in *McPeak* that led this court to reverse the defendant's conviction. *Id.* at 803 (noting that aside from the defendant's admission that he consumed cannabis about an hour before being stopped, the State provided no additional evidence of impairment or

odor to show that cannabis remained in his breath, blood, or urine as required under section 11-501(a)(6)); see also *People v. Briseno*, 343 Ill. App. 3d 953, 962 (2003) (there was sufficient evidence of the defendant's guilt under section 11-501(a)(6) based on his admission of smoking cannabis just before driving, his slurred speech, his dilated pupils, his slower-than-average motor skills, and the odor of cannabis emanating from his breath and his vehicle).

¶ 21    In this case, the State presented sufficient evidence to show the presence of a controlled substance in defendant's breath, blood, or urine. Defendant admitted to Officer Pedraja that she had taken two Xanax pills, one recently before driving, and a Vicodin pill. In addition to this admission, her level of impairment provided circumstantial evidence that the prescription drugs were in her breath, blood, or urine when she was driving. First, defendant was weaving while driving. Second, defendant could not locate her license even when plainly visible in her wallet. Third, Officer Pedraja observed defendant to be "very confused" and "very incoherent" as to what was occurring. Fourth, defendant could not explain the damage to her vehicle. Finally, defendant failed the field sobriety tests in that she swayed throughout the process and had a hard time keeping her balance. The HGN test provided a basis to conclude that defendant had a high level of alcohol intoxication or impairment by drugs. Based on all of this evidence, the State proved beyond a reasonable doubt that drugs remained in defendant's breath, blood, or urine under section 11-501(a)(6).

¶ 22    Defendant next argues that the State failed to prove "unlawful use." According to defendant, "the most one can say in this case is that [she] had prescription medicine in her system at the time that she was driving." In other words, defendant argues that there was no evidence that she ever unlawfully used or consumed any controlled substance. The State counters defendant's argument by relying on *People v. Rodriguez*, 398 Ill. App. 3d 436 (2009), which held that unlawfulness was not a separate element of the offense and that possession of a controlled substance was unlawful *per se*. *Id*. at 442.

¶ 23    In *Rodriguez*, the defendant was found guilty of violating section 11-501(a)(6) based upon the presence of cocaine in his urine. *Id*. at 437. The defendant did not challenge the presence of cocaine in his urine but instead argued that the State did not show that his use was unlawful, because it did not show that there was no accepted medical use of the cocaine. *Id*. at 438. The court reasoned that section 11-501(a)(6) was designed to ban driving a vehicle with any amount of an unlawfully ingested controlled substance in a person's breath, blood, or urine. *Id*. at 440. In defining the word "unlawful" in that section, the court noted that section 11-501(a)(6) expressly referred to the unlawful use or consumption of a controlled substance listed in the Controlled Substances Act and that it was necessary to look to the Controlled Substances Act for the answer. *Id*.

¶ 24    The court went on to say that cocaine was a controlled substance under the Controlled Substances Act. *Id*. at 441 (citing 720 ILCS 570/206(b)(4) (West 2004)). The Controlled Substances Act provided that, except as otherwise authorized by the Act, it was unlawful for any person to knowingly possess a controlled substance. *Id*. (citing 720 ILCS 570/402 (West 2004)). The court concluded that, because it was unlawful for any person to knowingly possess a controlled substance, the State did not have to establish that the use was "unlawful," but it did have to establish use or consumption of a controlled substance. *Id*. at 442. In other words, the court held that "unlawfulness [was] not a separate element of the offense." *Id*.; see also *Martin*, 2011 IL 109102, ¶ 16 (citing *Rodriguez*, 398 Ill. App. 3d at

- 5 -

442) (because possession of a controlled substance was unlawful *per se*, the State had to establish simply that the defendant used or consumed a controlled substance before driving; unlawfulness was not a separate element of the offense).

¶ 25    The *Rodriguez* court further noted that the language, "except as otherwise authorized" by the Controlled Substances Act, referred to exceptions and exemptions within the Controlled Substances Act, including an exemption authorizing lawful possession pursuant to a lawful prescription of a practitioner. *Rodriguez*, 398 Ill. App. 3d at 441 (citing 720 ILCS 570/302(c)(3) (West 2004)). Critical here, the *Rodriguez* court noted that the Controlled Substances Act provided that it was not necessary for the State to negate any exemption or exception under the Act; rather, the burden of proof of any exemption or exception was upon the person claiming it. *Id.* (citing 720 ILCS 570/506 (West 2004)). Accordingly, the court stated that "a defendant charged with possession of a controlled substance must produce evidence that his possession was pursuant to a prescription, which then places the burden on the State to disprove the defense beyond a reasonable doubt." *Id.*

¶ 26    Defendant in this case does not dispute that Xanax and Vicodin are controlled substances under the Controlled Substances Act. See 720 ILCS 570/204, 210 (West 2010). Therefore, once defendant admitted to ingesting Xanax and Vicodin prior to driving, the State met its burden of showing that defendant used or consumed a controlled substance. After that, the burden shifted to defendant to prove the exemption authorizing lawful possession pursuant to a lawful prescription of a practitioner. See 720 ILCS 570/302(c)(3) (West 2010) (a person may lawfully possess a controlled substance under the Controlled Substances Act if it is pursuant to a lawful prescription of a practitioner); see also *Rodriguez*, 398 Ill. App. 3d at 445 (it has never been a requirement under the Controlled Substances Act for the State to show the absence of a valid medical prescription to establish a violation of the Controlled Substances Act).

¶ 27    By arguing that there was no evidence that she ever unlawfully used or consumed any controlled substance, defendant misunderstands that the burden shifted to her. See *Rodriguez*, 398 Ill. App. 3d at 445 ("[I]f the use was somehow exempted or excepted as to amount to lawful conduct, we adhere to the view that an exception would be an affirmative defense the defendant would have to raise, which we point out was not done in this case."). Defendant did not present evidence of a prescription or any evidence in this case. Rather, defendant merely relied on Officer Pedraja's testimony to the effect that she claimed to take the medicine pursuant to a valid prescription. However, as stated, it was not the State's burden to negate any exemption or exception under the Controlled Substances Act; rather, the burden of proving any exemption or exception was upon defendant. See 720 ILCS 570/506 (West 2010). Defendant's failure to do so separates this case from *Vente*, 2012 IL App (3d) 100600, on which she relies. See *id.* ¶ 13 (the evidence established that the defendant had a valid prescription for the cough medicine and that she had taken the medication in accordance with the prescribed dosage). Because the State showed that defendant used or consumed a controlled substance, and defendant did not meet her burden of proving that an exemption applied, there was sufficient evidence of "unlawful use" under section 11-501(a)(6).

¶ 28    As a final matter, we note that the court denied defendant's motion to reconsider based on section 11-501(b). See 625 ILCS 5/11-501(b) (West 2010) ("The fact that any person charged with violating this Section is or has been legally entitled to use alcohol, other drug or drugs, or intoxicating compound or compounds, or any combination thereof, shall not

constitute a defense against any charge of violating this Section."). In addition, the State largely relies on section 11-501(b) as an appropriate basis to affirm defendant's conviction. However, given our analysis under section 11-501(a)(6), we need not address the parties' arguments pertaining to section 11-501(b). See *People v. Pankhurst*, 365 Ill. App. 3d 248, 258 (2006) (we may affirm on any basis in the record).

¶ 29                                 III. CONCLUSION

¶ 30        For the aforementioned reasons, the judgment of the Lake County circuit court is affirmed.

¶ 31        Affirmed.