# Illinois Official Reports

## Appellate Court

---

### *People v. Castino*, 2019 IL App (2d) 170298

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MATTHEW R. CASTINO, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-17-0298 |
| Filed | June 14, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 15-DT-2239; the Hon. Paul A. Marchese, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Thomas A. Lilien, Yasemin Eken, and Bryan G. Lesser, of State Appellate Defender's Office, of Elgin, for appellant.<br><br>Robert B. Berlin, State's Attorney, of Wheaton (Lisa Anne Hoffman and Jaime A. Evans, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.<br>Presiding Justice Birkett and Justice Hutchinson concurred in the judgment and opinion. |

**OPINION**

¶ 1        Defendant, Matthew R. Castino, appeals his conviction of driving under the influence (DUI) for driving with heroin in his breath, blood, or urine (625 ILCS 5/11-501(a)(6) (West 2014)). He contends that the evidence was insufficient to prove him guilty beyond a reasonable doubt when the arresting officer was not certified as a drug recognition expert (DRE), the court previously dismissed a count alleging impairment, and a video contradicted the officer's testimony. We affirm.

¶ 2                                        I. BACKGROUND

¶ 3        Defendant was arrested on August 21, 2015, and charged with multiple counts, including the DUI charge at issue on appeal. In January 2017, a bench trial was held.

¶ 4        Evidence at trial showed that, on August 21, 2015, Hanover Park police officer Tim Allen and Detective Dan Cortese were patrolling in an unmarked car when Allen observed a woman exit a car at a gas station and throw out a metal object. The woman returned to the car, and it pulled out of the gas station. The car had expired plates, was driving approximately 10 miles per hour in a 40-mile-per-hour zone, and drifted between lanes. Based on those observations, the officers stopped the car.

¶ 5        Allen approached the car and spoke to defendant, who was sitting in the driver's seat. According to Allen, defendant's eyes were very red and his pupils very constricted. Defendant had fresh and old track marks on his arms and noticeable swelling in his arms and hands. Defendant's nose was bleeding, there was a white powdery substance in his right nostril, and his shirt appeared to have a dry blood-like stain on the front.

¶ 6        Allen testified about his experience and specialized training that focused on gangs and drugs in the community. He had taken several drug classes, including one that covered heroin. Allen also took a drugged-driver certification class that covered heroin and the cues that a person exhibits when under the influence of a narcotic. However, Allen was not qualified as a DRE. Throughout his personal and professional life, Allen had observed individuals under the influence of narcotics over 100 times and had been involved with stops involving heroin approximately 15 times. He had also investigated individuals who had recently used drugs that left fresh track marks on their arms. Based on his training and experience, Allen opined that defendant's track marks were both fresh and old and that defendant's swollen hands and arms and constricted pupils indicated narcotics use. Allen testified that, based on his training and experience, heroin can be white and can be snorted, causing the nose to bleed.

¶ 7        During the stop, Allen noticed a hypodermic needle in the pocket of the driver's-side door of the car. Defendant admitted that the needle was his. Allen testified that, based on his training and experience, such needles are commonly used to ingest narcotics and could create track marks. According to Allen, defendant also said that he was a heroin addict and had last used heroin a week ago. When Allen asked defendant about the appearance of defendant's eyes and nose, defendant responded that he thought that it was from the day before or a few hours ago. When Allen asked about the appearance of defendant's arms, defendant admitted that he had used a few hours ago, in the morning. Allen then shined his flashlight into defendant's eyes and noticed that defendant's pupils did not constrict. There was no video of Allen's interactions with defendant while defendant was sitting in the car.

¶ 8    Allen next searched defendant outside of the car and found in defendant's pockets a blue rubber band, a paper towel with a blood-like substance on it, a folded piece of paper, and a cotton swab. Allen testified that, based on his training and experience, the recovered items were consistent with a drug kit. A search of the car revealed numerous hypodermic needles scattered throughout. A search of the woman in the passenger seat revealed small plastic bags of a white powdery substance that field-tested positive for heroin. Allen could not recall the specific color that the test would show, but he testified that it changed color to show that the substance was heroin.

¶ 9    Allen next administered field sobriety tests to defendant, which were video recorded. The video shows that, before administering the tests, Allen checked that the device was recording and then asked defendant to tell him again when he last used heroin, stating that defendant had just said that it was a week ago and now did not know when it was. Allen told defendant that, looking at his eyes and arms, he knew that defendant had shot up within the last couple of hours. Defendant denied using heroin, stating that he was not on any drugs, had not had any heroin, and had not admitted to doing any drugs.

¶ 10    Allen administered the horizontal gaze nystagmus test, the lack-of-convergence test, the vertical gaze nystagmus test, the walk-and-turn test, the one-leg-stand test, and the Romberg test. During the tests, defendant's eyes were still red, his pupils still very small, and they did not track back and forth smoothly. Defendant displayed a lack of convergence in one of his eyes and was not able to look directly upward to Allen's finger. During the walk-and-turn test, defendant stepped off the line, raised his arms, and did not touch heel to toe. During the one-leg-stand test, defendant swayed, raised his arms, and miscounted. During the Romberg test, Allen observed eyelid trembling, defendant swayed back and forth, and he overestimated a 30-second interval by 3 seconds.

¶ 11    Allen opined that defendant was under the influence of heroin. Defense counsel objected on the basis that Allen was not qualified as a DRE. The trial court initially overruled the objection, stating that, while Allen's training was not as extensive as that of a DRE, he could testify to his opinion. However, the trial court later reversed itself before issuing its finding of guilt, stating:

"I want to stop at this point before I forget and indicate that I ruled that the officer could offer his opinion as to the impairment as to Heroin in this case. For the purposes of the record, I am versing [*sic*] myself on that. As I looked through more case law during the break and between witnesses, I don't think that's the correct ruling. So his opinion as to whether or not the defendant was under the influence of Heroin—just the opinion question, which is what was objected to—because he's not a DRE, because he hasn't had that extra training, I am going to strike it. He did testify as to other things that there was foundation to in his testimony, but specifically as to the opinion, which is what was objected to, that objection is sustained. The answer as to the officer's opinion that he was under the influence of Heroin is going to be stricken, and I'm not going to consider it in my ruling."

¶ 12    Defendant was taken to the police station, where he refused to provide blood and urine samples. Officer Mark Atkinson searched the garbage can at the gas station and found an iced-tea can that was torn in half. Inside was a syringe, a small plastic bag, and a Ziploc plastic bag in a paper towel. Based on his training and experience, Atkinson opined that the items were

used to cook heroin before it was ingested. Atkinson also found a hypodermic needle, which would be commonly used to ingest heroin.

¶ 13 Cortese testified and corroborated Allen's testimony. During the stop, Cortese noticed that defendant's hands were puffy and his arms were very swollen with track marks everywhere. Based on his training and experience, Cortese believed that some of the track marks were fresh. Cortese was present when the bags containing a white powdery substance were recovered from the woman in the car. Like Allen, Cortese had attended specialty training, and he had been involved in 20 or 30 heroin-related stops in his professional life. Like Allen, Cortese could not recall the specific color the field test would show, but he testified that it showed that the substance taken from the woman was heroin.

¶ 14 After the close of the State's case, the court granted defendant's motion to dismiss a DUI charge based on impairment, finding that the State had not shown that defendant was impaired to a degree that rendered him incapable of driving safely. See *id.* § 11-501(a)(4). Defendant did not present any evidence, and the court found him guilty of the remaining charges. The court discussed the evidence, noting that defendant did not do poorly on some tests, including the Romberg test. However, the court further noted that the issue was use instead of impairment. The court noted the observations of powder and blood in defendant's nose, track marks on his arms, and swollen hands. The court also noted defendant's admission that he used heroin several hours earlier and the presence of drug paraphernalia. Ultimately, the court held that there was "a lot" of circumstantial evidence to prove defendant guilty beyond a reasonable doubt.

¶ 15 Defendant moved for a new trial, arguing that the evidence was insufficient because Allen was improperly allowed to testify about his opinions when he was not qualified as a DRE. He also argued that, in order to convict him based on circumstantial evidence, the State had to prove impairment, and the court specifically found that there was no impairment when it dismissed the other DUI count. The court denied the motion, stating that, while defendant's performance on the field tests was not terrible, there was some evidence of impairment. The court sentenced defendant to 12 months' supervision, and he appeals.

¶ 16                                  II. ANALYSIS

¶ 17 Defendant contends that the State failed to prove him guilty beyond a reasonable doubt when the State provided no expert testimony, it failed to prove substantial impairment, and Allen's testimony was contradicted by the video.

¶ 18 To sustain defendant's conviction of DUI, the State was required to prove that defendant was driving a vehicle with any amount of heroin in his breath, blood, or urine resulting from the unlawful use or consumption of it. *Id.* § 11-501(a)(6). On a challenge to the sufficiency of the evidence, we must determine whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. *People v. Brown*, 2013 IL 114196, ¶ 48. The reviewing court will not retry the defendant or substitute its judgment for that of the trier of fact on issues pertaining to conflicts in testimony, the credibility of witnesses, or the weight of the evidence. *Id.* Additionally, the trier of fact is not required to disregard inferences that flow normally from the evidence or to seek out all possible explanations consistent with innocence and raise them to a level of reasonable doubt. *People v. Jackson*, 232 Ill. 2d 246, 281 (2009).

¶ 19    Expert testimony is not required in every DUI drug case. *People v. Gocmen*, 2018 IL 122388, ¶¶ 34, 37-38. Circumstantial evidence may be used to prove the presence of a substance in a defendant's breath, blood, or urine. *People v. Kathan*, 2014 IL App (2d) 121335, ¶ 20. Circumstantial evidence is proof of facts and circumstances from which the trier of fact may infer other connected facts that reasonably and usually follow according to common experience. *People v. McPeak*, 399 Ill. App. 3d 799, 801 (2010). Likewise, a conviction of DUI may be supported solely by the credible testimony of the arresting officer. *People v. Janik*, 127 Ill. 2d 390, 402 (1989). Opinion testimony of the arresting officer is not necessary, however. *People v. Bitterman*, 142 Ill. App. 3d 1062, 1065 (1986). Moreover, a defendant's admissions can provide direct evidence to sustain a conviction. *People v. Ciborowski*, 2016 IL App (1st) 143352, ¶ 110. Although the State was not required to prove that a drug in defendant's system impaired his ability to drive, impaired driving was relevant circumstantial evidence. *Kathan*, 2014 IL App (2d) 121335, ¶ 20.

¶ 20    The case law illustrates how circumstantial evidence may be sufficient to prove that a defendant had a drug in his breath, blood, or urine, even without the results of field sobriety tests. For example, in *People v. Briseno*, 343 Ill. App. 3d 953, 962 (2003), an officer's observations that the defendant had slurred speech, dilated pupils, and slower-than-average motor skills were sufficient proof when coupled with the odor of cannabis on the defendant's breath and the defendant's admission that he had smoked cannabis. Thus, even if the trial court had improperly relied on field sobriety tests, the remaining evidence was sufficient to convict the defendant. *Id.*

¶ 21    In *Kathan*, we added that impairment was relevant circumstantial evidence that a drug existed in the defendant's breath, blood, or urine without expert testimony to that fact. There, we concluded that the evidence was sufficient when the defendant admitted to taking two Xanax pills, one recently before driving, and showed signs of impairment, including failure of field sobriety tests. *Kathan*, 2014 IL App (2d) 121335, ¶ 21. In comparison, in *McPeak*, we found the evidence insufficient when the defendant admitted to smoking cannabis before he was stopped but did not show any signs of impairment and the only other evidence provided was that an officer smelled burnt cannabis "about [defendant's] person." *McPeak*, 399 Ill. App. 3d at 802; see also *People v. Allen*, 375 Ill. App. 3d 810, 812, 816 (2007) (defendant's admission to smoking cannabis the night before was insufficient when defendant did not exhibit signs of impairment and no paraphernalia or drug residue was found in his vehicle); *People v. Workman*, 312 Ill. App. 3d 305, 311 (2000) (when there is no competent evidence by a qualified expert and the defendant has not admitted to taking the drug and being under the influence, the lack of competent testimony may create reasonable doubt absent other sufficiently incriminating evidence).

¶ 22    Here, there was ample circumstantial evidence that defendant drove with heroin in his breath, blood, or urine. Defendant exhibited signs of recent drug use in that he had fresh track marks on his arms and swollen arms and hands. His eyes were red and his pupils were constricted. Indeed, he showed signs of having used drugs immediately before the stop in that he had white powder and blood in his nose. That inference was further supported by the evidence that the passenger threw out drug paraphernalia and had drugs on her person. A hypodermic needle was found in the pocket of the driver's-side door, and defendant had drug paraphernalia on his person. Defendant admitted that he used heroin, including that he had done so earlier that morning. Defendant also exhibited signs of impairment when he drove

abnormally slow and drifted between lanes. Allen also observed that defendant had difficulties during some of the field sobriety tests, such as by stepping off of the line and raising his arms during the walk-and-turn test and swaying, raising his arms, and miscounting during the one-leg-stand test. Thus, this case is not like *McPeak* or *Allen*, where there was a lack of circumstantial evidence to prove the presence of a drug in the defendant's breath, blood, or urine when he was driving.

¶ 23    Defendant argues that proof of substantial impairment is required in order to convict based on circumstantial evidence and that the trial court specifically found that he was not impaired. While the trial court dismissed a count after finding that the State had not shown that defendant was impaired to a degree that rendered him incapable of safely driving, there nevertheless were signs of impairment. As previously noted, defendant drove abnormally slow and drifted between the lanes. He swayed, raised his arms, and stepped off of the line during field sobriety tests. The case law does not dictate that only a specific level of impairment may be considered as evidence of the presence of a drug. Rather, impairment is simply a relevant factor in the overall determination. See *Kathan*, 2014 IL App (2d) 121335, ¶ 20. It is up to the finder of fact to determine how to weigh it when reaching a determination of guilt.

¶ 24    Defendant also argues that the trial court wrongly considered his performance on certain field sobriety tests, in particular the Romberg test and the lack-of-convergence test, when Allen was not certified as a DRE. However, the trial court specifically stated that it was not considering Allen's opinion based on those tests. Further, as in *Briseno*, the record shows sufficient evidence without consideration of the tests. Other opinions given by the officers were based on their experience instead of scientific, technical, or specialized knowledge that requires qualification as an expert. See generally *Gocmen*, 2018 IL 122388, ¶ 37.

¶ 25    Finally, defendant argues that the evidence was insufficient because the video contradicted Allen's testimony that defendant admitted to using heroin on the morning of the arrest. Certainly, if the video truly contradicted crucial portions of the State's case, there very well might be an issue regarding the sufficiency of the evidence. See, *e.g.*, *People v. Kotlinski*, 2011 IL App (2d) 101251, ¶ 41 (video contradicted the key testimony of the State's key witnesses). But here, the video did not do so. Allen testified to statements that defendant made before the video was taken, while defendant was sitting in his car. The video was taken after defendant was outside of the car. Thus, the video did not contradict Allen's testimony to what defendant said in the car. Although defendant himself, on the video, contradicted Allen's testimony, this presented only a conflict in the evidence for the fact finder to resolve. See *Janik*, 127 Ill. 2d at 402-03. The court was entitled to resolve it against defendant and find him guilty beyond a reasonable doubt.

¶ 26                                III. CONCLUSION

¶ 27    For the reasons stated, the evidence was sufficient to prove defendant guilty of DUI beyond a reasonable doubt. Accordingly, the judgment of the circuit court of Du Page County is affirmed. As part of our judgment, we grant the State's request that defendant be assessed $50 as costs for this appeal. 55 ILCS 5/4-2002(a) (West 2016); see also *People v. Nicholls*, 71 Ill. 2d 166, 178 (1978).

¶ 28                Affirmed.